UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN                    C L O S E D
SOUTHERN DIVISION

DARRIN BRASWELL, #185623,

        Petitioner,

v.                                                     Case Number: 08-cv-10163
                                                Honorable Anna Diggs Taylor
BLAINE LAFLER,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF
APPEALABILITY AND LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS***

Petitioner Darrin Braswell,[1] a state inmate currently incarcerated at the Baraga Maximum Correctional Facility in Baraga, Michigan,[2] filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In October 2002, a Wayne County, Michigan, circuit court jury convicted Petitioner of (1) first-degree murder, MICH.COMP.LAWS § 750.316A, (2) assault with intent to murder, MICH.COMP.LAWS § 750.83, (3) felony-firearm, MICH.COMP.LAWS § 750.227b, and (4) felon-in-possession, MICH.COMP.LAWS § 750.224f. He was sentenced, as a third-degree habitual offender, to (1) life in prison for the murder conviction, (2) forty to eighty years in prison

---

[1] Petitioner signed his name "Braswell" on this petition but it is spelled "Brasswell" in the state court opinions and with the Department of Corrections.

[2] Petitioner was incarcerated at the Carson City Correctional Facility in Carson City, Michigan, when he initially filed his habeas petition. However, he has since been transferred to the Baraga Maximum Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption. However, because the Court is denying the petition in this case, it finds no reason to do so.

for the assault conviction, (3) ten years in prison for the felony-firearm conviction, and (4) thirty to sixty months in prison for the felon-in-possession conviction. In his petition, he alleges that he is incarcerated in violation of his constitutional rights and argues that those rights were violated because of prosecutorial misconduct, ineffective assistance of trial and appellate counsel, insufficient evidence, and improper jury instructions. For the reasons stated below, the petition is **DENIED**. The Court also declines to issue Petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis*, as any appeal would be frivolous.

## I. BACKGROUND

Petitioner's troubles in this case result from the shooting death of James Harold "Hank" Scandrick, during the late evening, early morning hours on May 7 and 8, 2001. Trial began on September 23, 2002, and concluded on October 7. Testimony revealed the following.

On the night in question, Petitioner invited friends from his neighborhood in Inkster, Michigan, to come to his sister's house in Detroit. The "Inkster crowd" included Scandrick, Michael Wells, Craig Steward, Steve Williams, and Anthony Ward. In caravan style, the men followed Petitioner, who was driving a black Cadillac, to his sister's house. Scandrick drove a rented white Alero, with Wells and Steward as passengers, and Williams followed in a blue truck, with Ward as a passenger. The men were celebrating Steward's birthday; they were partying and drinking in the garage of Petitioner's sister's house.

That garage was also a place where illegal dog fighting occurred on a regular basis, including the night in question. When Petitioner and his friends arrived, at least ten other unknown men from Detroit, the "Detroit crowd," were there, partying and drinking as well. Many of the witnesses that

were there were reluctant to come forward with information about their participation in, or observation of, the dog fighting.

However, the witnesses that did come forward stated that, at some point in time, Steward accused Petitioner of not being loyal to the "Inkster crowd." Petitioner declared his allegiance to the "Detroit crowd." The defense's theory was that an argument occurred between the men, a result of Petitioner, who acted as a referee during the dog fights, calling the results of the fights against the "Inkster crowd."

Testimony revealed that Petitioner punched Steward in the face. Eventually Steward was pulled away. Petitioner then ran out of the garage and into the house, while Steward and Wells attempted to leave. Wells testified, for the first time at trial, that Petitioner then came out of the house with a gun and shot at him. Both Wells and Steward testified that they were not armed. Steward said he did not actually see Petitioner shoot but assumed that he did. Both Wells and Steward testified that they then ran away from the house.

Six spent shell casings fired from the same .30 caliber weapon were found within approximately ten feet of each other in the front of the house. There was also evidence, in terms of broken car windows, that shots were fired in front of the house. The officer that took Wells's statement denied that Wells told her that he had been shot.

The men that remained in the garage, including Williams and Ward, testified that they heard multiple shots fired in front of the house. Several witnesses testified that when Petitioner returned to the garage, he was brandishing a gun and opened fire on the dozen or so men who remained, hitting the victim, Scandrick, twice. Scandrick asked Petitioner why he shot him. Petitioner then left the garage, as did the "Detroit crowd," leaving Williams and Ward, who tried to help Scandrick

out of the garage. However, Petitioner came back to the area to investigate a noise, which in turn caused Williams and Ward to run from the scene.

Shortly after the shooting, several of the men returned to the house to look for Scandrick; they did not find him. According to the men, the garage smelled like bleach and the area near the garage door was wet, like it had just been mopped.

Scandrick died at 2:15 a.m., on May 8, 2001. According to the testimony of Dr. Carl Schmidt, Deputy Chief Medical Examiner for Wayne County, Scandrick died from multiple gunshot wounds. Dr. Schmidt determined that the manner of death was homicide; Scandrick received two gunshot wounds, one to the mid-lower back and one to the left buttocks. Extensive blood was found on his clothing, as well as dirt, suggesting that he had been dragged. Dr. Schmidt did not perform Scandrick's autopsy. Nevertheless, he was able to testify from the records.

There was evidence that Petitioner and another man named Hack Welch took Scandrick to the hospital, although there was no blood found in the car that allegedly dropped him off. The murder weapon was never found. Petitioner was not seen again until almost a year later, after he was apprehended in Georgia on an unrelated traffic incident; he was then transported back to Detroit to face these charges.

After six days of trial, the jury found Petitioner guilty of the above-stated charges.

Following his sentencing, Petitioner, through counsel, filed his appeal of right in the Michigan Court of Appeals, raising the following claims:

> I. The prosecutor engaged in extensive misconduct by asking the jurors to sympathize with the victim and victim's family, by denigrating defense counsel and the [Petitioner], by placing the power and prestige of the prosecutor's office behind his case and his witnesses, and by appealing to the jurors' civic duty to obtain a conviction.

> II. [Petitioner] received the ineffective assistance of counsel at trial due to counsel's failure to object to extensive and pervasive prosecutorial
>
> misconduct, which was objectively unreasonable, and caused severe prejudice to the [Petitioner].

Subsequently, Petitioner filed a *pro se* supplemental brief, adding the following issue:

> III. [Petitioner] is being denied his federal and state right to the effective assistance of appellate counsel where counsel's performance is deficient and fails to raise valid issues [in his] appeal of right.

On June 3, 2004, in an unpublished opinion, the Michigan Court of Appeals affirmed Petitioner's convictions and sentences. *People v. Brasswell*, No. 246328, 2004 WL 1224219 (Mich.Ct.App. June 3, 2004). Petitioner then filed an application for leave to appeal that decision in the Michigan Supreme Court, raising the same three claims as raised in the Court of Appeals and adding the following:

> IV. Missing endorsed but not produced res gestae witness.
>
> V. Abuse of Discretion–erroneous jury instruction.
>
> VI. Prosecutor misconduct–subornation of perjury.

The Michigan Supreme Court denied the application on December 29, 2004. *People v. Braswell*, 471 Mich. 950, 690 N.W.2d 105 (2004).

Petitioner did not file a writ of certiorari in the United States Supreme Court, but rather, he filed a post conviction motion pursuant to Mich.Ct.R. 6.500 *et. seq.*, in the trial court, raising the following claims:

> I. The evidence of first degree murder was insufficient and it was error and a denial of due process to deny the motion [for] directed verdict and it was error to instruct the jury on transferred intent.
>
> II. The trial court was in error when it instructed the jury that it can infer

>
> premeditation from the use of a deadly weapon which denied [Petitioner] due process rights and a fair trial in violation of the [F]ourteenth [A]mendment.
>
> III. [Petitioner] was denied his due process right to a fair trial by the inadequate confusing, and imbalanced instructions given to the jury.
>
> IV. [Petitioner] was denied his right to confrontation in violation of his [VI] [A]mendment constitutional rights when the prosecutor argued facts not of the record and [he] was also denied his right to the effective assistance of trial counsel when [trial counsel] failed to object to the conduct of the prosecutor.

The trial court denied Petitioner's motion. *People v. Brasswell*, No. 02-007221 (Wayne County Circuit Court, Mar. 1, 2006). Petitioner's applications for leave to appeal that decision in the state appellate courts were both denied. *People v. Braswell*, No. 275714 (Mich.Ct.App. June 18, 2005); *People v. Braswell*, 480 Mich. 923, 740 N.W.2d 245 (Oct. 29, 2007).

Petitioner filed this habeas petition on January 11, 2008, raising the following claims:

> I. Prosecutor engaged in extensive misconduct by asking jurors to sympathize with victim and victim's family, by denigrating defense counsel and [Petitioner], by placing the power and prestige of his office behind his case and witnesses, and appealing to jurors' civic duty to obtain conviction.
>
> II. Petitioner received ineffective assistance of trial counsel when he refused to object to extensive and pervasive prosecutorial misconduct which was unreasonable and prejudicial to [him].
>
> III. Ineffective assistance of appellate counsel, failure to call endorsed res geste witness, ineffective assistance of trial counsel.
>
> IV. Ineffective assistance of appellate counsel, failure to raise subornation of perjury and abuse of discretion – jury instructions.
>
> V. The evidence of first degree was insufficient and it was error and a denial of due process to deny the motion for directed verdict and it was error to instruct the jury on transferred intent.
>
> VI. The trial court was in error when it instructed the jury that it could infer

>   premeditation from the use of a deadly weapon which denied [Petitioner] due process and a fair trial in violation of the [F]ourteenth [A]mendment.
>
> VII.   [Petitioner] was denied his due process right to a fair trial by the inadequate, confusing and imbalanced instructions given to the jury.

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's habeas corpus review of state-court decisions and states in pertinent part:

>   (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedin2gs.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F.3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal

7

law erroneously or incorrectly." *Id.* at 411.

### III. DISCUSSION

#### A. Claims I through IV

In his first claim, Petitioner alleges prosecutorial misconduct; Petitioner contends that the prosecutor improperly elicited sympathy for the victim, denigrated defense counsel, vouched for prosecution witnesses, and appealed to the jurors' sense of public duty. In his second claim, he alleges that his trial counsel was ineffective for failing to object to that misconduct. In his third claim, Petitioner argues that his appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim in his direct appeal. In his fourth habeas claim, Petitioner makes additional allegations of ineffective assistance of appellate counsel; that appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim regarding the res gestae issue. He also alleges that the trial court erred in giving the jury instructions and that the prosecutor suborned perjury. The Court will address these claims seriatim.

In addressing Petitioner's prosecutorial misconduct claims, the Michigan Court of Appeals found that, because there was no objection from defense counsel to the alleged acts of misconduct, its review of the claim was limited to whether "plain error" occurred. The Court of Appeals stated:

> Defendant first argues that he is entitled to a new trial because the prosecutor engaged in misconduct by appealing to the sympathy of the jury, by attacking the defense and defense counsel, by placing the power and prestige of the prosecutor's office behind the case, and by appealing to the jurors' civic duty. We disagree.
>
> To preserve the issue for appellate review, defendant must timely and specifically object to the prosecutor's improper conduct. Here, defendant failed to object to the prosecutor's statements in the trial court. Appellate review of an unpreserved claim of prosecutorial misconduct is for plain error affecting substantial rights. Reversal is only warranted when a plain error resulted in the conviction of a truly innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceeding independent of the defendant's innocence. If a

curative instruction could have alleviated any prejudicial effect, the appellate court will not find error requiring reversal.

A prosecutor may not appeal to the jury to sympathize with the victim. Here, the jurors were informed during voir dire that the victim's mother was waiting in the hallway, and that the prosecutor was going to have to report to her. This type of questioning was repeated with a number of potential jurors. Defense counsel stated that it was a case against defendant, and the question was if the jurors could be fair to defendant. The prosecutor objected, stating the question was if the jurors could be fair to everyone. The court responded by stating that each side could ask their own questions. In context, the prosecutor's reference to the victim's mother was made to stress the need for the jurors to be thoroughly honest in their responses to the questions presented in voir dire, particularly those addressed to whether they could put their own experiences aside and be fair. We find no reversible error.

During closing argument, the prosecutor made references to the fact that the victim was a devoted father of five girls and elicited testimony about toys, clothing and candy belonging to the girls that was found in the victim's car, and that defendant dumped the victim at the hospital like "garbage." The comments were only a brief part of the overall argument. Defense counsel did not object, but addressed the comments in closing, noting that the victim was not on trial and that the observations had nothing to do with the question whether defendant was guilty. The trial court instructed the jury not to be influenced by sympathy or prejudice. Under these circumstances, while the prosecutor's comments were gratuitous and improper, defendant was not prejudiced, and reversal is not required.

Defendant next argues that the prosecutor improperly attacked the defense and defense counsel. A prosecutor is not permitted to personally attack defense counsel, or the credibility of defense counsel, or suggest that defense counsel is intentionally attempting to mislead the jury.

Some of the prosecutor's arguments were legitimate comment on the case; e.g., the prosecutor expressed that any shortcomings in his witnesses were defendant's fault, stating "he picked them" when he committed the crime. Other comments were clearly improper; e.g., in rebuttal the prosecutor made several comments impugning defense counsel, and several comments fairly characterized as improper "civic duty" arguments. Nevertheless, we conclude that reversal is not

required because any prejudice could have been cured by a timely objection, and the comments were not so inflammatory as to cause the jury to decide the case based on impermissible considerations, rather than the evidence presented.

*Brasswell*, No. 246328, 2004 WL 1224219, at *1-2 (citations omitted).

9

The ground for the Court of Appeals' decision constitutes a procedural default, and therefore, the claim may only be reviewed by this Court if Petitioner demonstrates cause and prejudice. *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 423-24 (6th Cir. 2003). The Sixth Circuit Court of Appeals has held that even a state court's plain error review of federal constitutional claims, as opposed to mere state law claims, is sufficient to constitute a procedural default of such claims. *See Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007).

Petitioner's prosecutorial misconduct claims are procedurally defaulted by his failure to object. The United States Supreme Court has recognized that the failure to contemporaneously object is generally a recognized and firmly established independent and adequate state law ground for refusing to review trial errors. *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). The fact that the state appellate court may have examined whether the alleged misconduct resulted in "plain error" does not affect the preclusive effect of the procedural bar. The Sixth Circuit has held that the failure of a criminal defendant to contemporaneously object constitutes a procedural default even though an appellate court subsequently reviewed the matter for manifest injustice. *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989). Moreover, an alternative ruling by the state appellate court noting both lack of contemporaneous objection and lack of merit is still subject to the procedural default rule. *Scott v. Mitchell*, 209 F.3d 854, 866 (2000).

The *Coleman* Court stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750. Petitioner has the burden of showing cause and prejudice to overcome

this procedural default. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754).

In this case, Petitioner alleges that the cause for his procedural default was ineffective assistance of trial counsel, i.e., that his trial attorney erred in failing to object to the prosecutor's misconduct. "Attorney error that amounts to ineffective assistance of counsel can constitute 'cause' under the cause and prejudice test." *Lucas*, 179 F. 3d at 418 (citing *Gravley v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996)). However, in *Murray v. Carrier*, 477 U.S. 478, 487 (1986), the Supreme Court held that attorney error is not cause for procedural default analysis unless the performance of petitioner's counsel was constitutionally ineffective under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984).

Under *Strickland*, it is strongly presumed that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Accordingly, the proper inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance" viewed at of the time of counsel's conduct. *Id.* Courts must not view a trial in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996). Even when counsel's performance is deficient under this standard, constitutionally ineffective assistance of counsel requires a showing of actual prejudice. *Strickland*, 466 U.S. at 692. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In this case, the Michigan Court of Appeals addressed Petitioner's prosecutorial misconduct claims for "plain error" and found that Petitioner had not shown prejudice from trial counsel's failure to object. In fact, the Court of Appeals concluded that it was not a failure but a conscious decision not to object and was therefore a matter of trial strategy:

> The Court will not second-guess matters of trial strategy. It is probable that counsel determined, as a matter of trial strategy, that he should not object to the prosecutor's statements because it could have been harmful in the eyes of the jury by making the jury focus on the prosecutor's arguments. Also, defense counsel specifically stated, "I rarely object during closing," which is where most of the comments referred to by defendant as inappropriate occurred. Failure of a trial strategy does not necessitate a conclusion that the strategy constituted ineffective assistance of counsel. Defendant has not shown that had counsel objected to the comments, and had the objections been sustained, it is reasonably probable that the result of the proceedings would have been different.

*Brasswell*, No. 246328, 2004 WL 1224219, at *2 (citations omitted).

Petitioner has failed to overcome the presumption that, under the circumstances, the challenged action might have been sound trial strategy. *Strickland*, 466 U.S. at 689. He has also failed to show that the alleged errors "had substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993), or that there is a reasonable probability that, but for the alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Moreover, Petitioner's prosecutorial claims are meritless in addition to being procedurally defaulted. To prevail on a claim of prosecutorial misconduct, a petitioner must demonstrate that the prosecution's conduct violated a specific constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*,

416 U.S. 637, 643 (1974). It is not enough to show that the prosecution's conduct or remarks were undesirable or even universally condemned. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). On habeas review, the alleged misconduct must be so egregious as to render the entire trial fundamentally unfair. *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997). "In order to constitute the denial of a fair trial, 'prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial' or 'so gross as probably to prejudice the defendant.'" *Pritchett*, 117 F.3d at 964 (citations omitted).

Against that backdrop, the Court concludes that the Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent; Petitioner has failed to demonstrated that any alleged errors had a substantial and injurious effect or influence in determining the jury's verdict, *Brecht*, 507 U.S. at 638, or that there is a reasonable probability that, but for the alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner is therefore not entitled to habeas relief regarding these claims.

Petitioner also alleges that he was denied his constitutional rights when the prosecutor failed to produce a res gestae witness at his trial. Errors of state law do not provide a basis for habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Thus, Petitioner's claim that the prosecutor may have violated state law regarding the production of res gestae witnesses is not cognizable on habeas review. *See Johnson v. Hofbauer*, 159 F.Supp.2d

13

582, 601 (E.D. Mich. 2001).³ Regarding this claim, Petitioner also argues that trial counsel was ineffective for failing to object, and that appellate counsel was ineffective for failing to present the issue on appeal. In addressing the claim, the Michigan Court of Appeals stated:

> Defendant contends that Welch was an essential res gestae witness who transported the victim to the hospital after defendant called Welch on the phone, and that Welch was the last person to speak to the victim. Defendant contends that had Welch been called to testify, defendant may have been convicted of manslaughter rather than murder.
>
> Even though defendant is correct that Welch was an endorsed witness, defendant's claim fails because both defense counsel and defendant requested that the jury not be instructed on lesser offenses to murder, thus foreclosing the possibility of a manslaughter conviction. Thus, any error in failing to produce this witness, and any omission in the trial transcript of counsel's objection thereto could not have affected the trial's outcome.

*Brasswell*, No. 246328, 2004 WL 1224219, at *3.

The failure of a Michigan prosecutor to produce res gestae witnesses implicates no federal right. Since Petitioner was not deprived of a federal constitutional right, his claim is not cognizable and he is therefore not entitled to habeas relief regarding this claim.

Petitioner makes additional allegations of ineffective assistance of appellate counsel, that appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim regarding the res gestae issue. He also alleges that the trial court erred in giving the jury instructions and that the prosecutor suborned perjury.

---

³Although there is no published Sixth Circuit decision directly on point, in a number of unpublished decisions the Sixth Circuit has reached this conclusion. *See*, e.g., *Smith v. Elo*, 198 F.3d 247 (6th Cir. 1999) (*per curiam*); *Moreno v. Withrow*, 61 F.3d 904 (6th Cir. 1995) (*per curiam*); *Lewis v. Jabe*, 891 F.2d 291 (6th Cir. 1989) (*per curiam*); *Atkins v. Foltz*, 856 F.2d 192 (6th Cir. 1988) (*per curiam*).

Although Petitioner had the opportunity to present these claims in his *pro se* supplemental brief on appeal, and did in fact raise other issues, he did not. Thus, the Court of Appeals never had the opportunity to address them. Therefore, Petitioner's additional ineffective of appellate counsel claim is unexhausted, and his jury-instruction claim is not cognizable on federal habeas review. Jury instructions in state trials are matters of state law, and procedures not involving federal constitutional issues are not reviewable in a federal habeas proceeding. *Nickerson v. Lee*, 971 F.2d 1125, 1137 (4th Cir. 1992). And, the subornation of perjury allegation was offered without sufficient specificity

necessary to allow that court to consider it; Petitioner merely made the unsupported allegation that the prosecutor presented testimony "which he knew to be false."

Additionally, regarding the perjury claim, this Court concludes that Petitioner could not have shown prejudice as a result of the omission of that issue. As appellate counsel explained in a letter to Petitioner, dated November 24, 2003:

> The problems with Mr. Wells'[s] story were fully explored on cross-examination and the jury was in the best position to determine his credibility. Even if he was not "shot", the law regarding assault with intent to murder is satisfied with the evidence that he was "shot at." Several witnesses testified that shots were fired near Mr. Wells so there is no legal issue regarding insufficient evidence in light of all of the other evidence offered. Furthermore, there is no way to prove that the prosecutor willingly suborned perjury. This is a very high standard and as I said, the problems with his story were fully outlined for the jury. The final issue regarding Mr. Wells, as I understand, is that you believe he can be persuaded to sign an affidavit admitting that he made up the story about being shot in order to avoid jeopardizing his probationary status. I am not pursuing this for a couple of reasons. My reluctance largely stems from the fact that I highly doubt he is willing to now admit that he committed perjury to avoid violating probation, given that the penalty for perjury in a capital offense is a sentence of life in prison. Even if he is willing to admit that he lied and was not shot, as I already mentioned, the law does not require actual physical injury to sustain the charge of assault with intent to murder, and there was other evidence to sustain this charge (i.e., six spent shell casings near the area

15

>where at least four witnesses testified Mr. Wells was walking). Finally, and perhaps least importantly, this does nothing to help the situation you are in regarding the murder conviction.

(Letter from appellate counsel to Petitioner dated November 24, 2003, included in Petitioner's Application for Leave to Appeal, Case No. 126507)

Against that backdrop, the Court concludes that appellate counsel made a strategic decision in omitting these issues. Petitioner is not entitled to habeas relief regarding his ineffective assistance of appellate counsel claims.

### B. Claims V, VI, and VII

In his fifth habeas claim, Petitioner alleges that there was insufficient evidence regarding the first-degree murder charge. In his sixth habeas claim, he argues that the trial court erred when it instructed the jury that it could infer premeditation from the use of a deadly weapon. In his seventh habeas claim, he contends that he was denied a fair trial because of the inadequate, confusing and imbalanced instructions given to the jury. Respondent argues that these claims are procedurally defaulted. The Court agrees.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *Wainwright*, 433 U.S. at 85; *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default

does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last explained state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, Petitioner's claims are procedurally defaulted because he raised them for the first time in his motion for relief from judgment. The Michigan Court of Appeals and the Michigan Supreme Court, the last state courts rendering judgments in the case based their decisions to deny Petitioner's applications for leave to appeal the trial court's denial of his motion for relief from judgment on Petitioner's failure to comply with Mich.Ct.R. 6.508(D). While the judgments were brief, they were based on an independent and adequate state procedural rule: Petitioner's procedural default of failing to raise these claims in his appeal of right. Since the Michigan Court of Appeals and the Michigan Supreme Court were the last state courts rendering judgments in this case, their decisions denying Petitioner's claims on the basis of a state procedural bar prevents federal habeas review. *Simpson*, 238 F.3d at 407.

Again, Petitioner attempts to establish cause to excuse his procedural default by claiming that his appellate counsel was ineffective for failing to raise his claims in his direct appeal but, for the reasons previously stated, *see* Section A, he has failed do so. Attorney error will not constitute adequate cause to excuse a procedural default unless it amounts to constitutionally ineffective assistance of counsel under the criteria established in *Strickland*. The mere failure to raise a claim (even if it is meritorious) on appeal does not constitute ineffective assistance of appellate counsel

17

sufficient to establish cause to excuse a procedural default. *Rust v. Zent*, 17 F.3d 155 (6th Cir. 1994). In *Smith v. Robbins*, 520 U.S. 259, 288 (2000), the United States Supreme Court stated:

> In *Jones v. Barnes*, 463 U.S. 745 (1983), we held that appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. *See*, e.g., *Gray v. Greer*, 800 F.2d 644, 646 [7th Cir. 1986] ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome").

*See also McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000) (Where claim was not "dead bang winner," Petitioner's appellate counsel's failure to raise it on direct appeal did not constitute cause to excuse procedural default).

Petitioner fails to demonstrate that the issues that were omitted by his appellate counsel in his direct appeal were clearly stronger than those that were presented and he has failed to overcome the strong presumption that his counsel was competent. Because he has failed to establish cause for his procedural default, there is no need to determine whether Petitioner can meet the prejudice prong of the "cause and prejudice" test. *Smith v. Murray*, 477 U.S. 527 (1986); *Long v McKeen*, 722 F.2d 286 (6th Cir. 1983). Against that backdrop, the Court concludes that Petitioner has failed to meet his burden of establishing cause and prejudice or a fundamental miscarriage of justice to excuse his procedural default, and therefore, he is not entitled to federal habeas review on these claims.

### C.  Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A district court, in its discretion, may decide whether to issue a COA at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such

a determination. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002); *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir. 1997), *overruled in part on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997). In denying the habeas petition, the Court has studied the case record and the relevant law, and concludes that, as a result, it is presently in the best position to decide whether to issue a COA. *See Castro*, 310 F.3d at 901 (quoting *Lyons*, 105 F.3d at 1072) (a district judge who has just denied a habeas petition has knowledge of both the record and the relevant law and is best able to determine whether to issue the COA).

A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. When a federal district court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of

reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

Having conducted such a review, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims or that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. A certificate of appealability is not warranted in this case nor should Petitioner be granted leave to proceed on appeal *in forma pauperis* as any appeal would be frivolous. *See* Fed.R.App.P. 24(a).

## IV.  CONCLUSION

Accordingly, **IT IS ORDERED** that Petitioner's petition for a writ of habeas corpus is **DENIED**.  (Dkt. # 1.)

**IT IS FURTHER ORDERED** that the Court declines to issue Petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis*.


DATED:  November 13, 2009                     **s/Anna Diggs Taylor**
                                              ANNA DIGGS TAYLOR
                                              UNITED STATES DISTRICT JUDGE

---

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order of Dismissal was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on November 13, 2009.

Darrin Braswell #185623
Baraga Maximum Correctional Facility
13924 Wadaga Road
Baraga, MI 49908

                                              s/Johnetta M. Curry-Williams
                                              Case Manager